KIDDIE KORNER DAY SCHOOLS, INC., CHILD ACRE CULTURE AND DEVELOPMENT, INC., MINI-AMERICAN ASSOCIATES, INC., DOING BUSINESS AS LITTLE RED SCHOOL HOUSE, KIDDIE-LAND DAY CARE CENTER, INC., KINDERCARE LEARNING CENTERS, INC., ELLIE L. BROOKS, DOING BUSINESS AS BROOKS' DAY CARE, LAVERN M. RABB, DOING BUSINESS AS LITTLE LEARNERS DAY CARE, MELVIN HATLEY AND BARBARA HATLEY, DOING BUSINESS AS EASTWAY DAY NURSERY AND EASTWAY PLAZA DAY CARE, MARION S. BLYTHE AND MIGENE B. RAPPE, DOING BUSINESS AS LITTLE PEOPLE'S SCHOOL, BAILEY O. COOPER AND HENRY B. COOPER, DOING BUSINESS AS MARY MOPPET'S DAY CARE SCHOOLS OF CHARLOTTE, ROBERT L. EAGLE, ALBERT S. ROACH, AND MARY T. ROACH v. CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, A PUBLIC BODY CORPORATE

No. 8126SC212

(Filed 15 December 1981)

1. **Schools § 1— extended day program at school—uniform system of free public schools**

An extended day program formulated by defendant school board and operated at an elementary school by a school sponsored committee and for which a tuition fee is charged to the participants does not violate the mandate of Art. IX, §§ 1 and 2(1) of the N.C. Constitution requiring a uniform system of free public schools since (1) the mandate relates to the statewide scheme for public education and does not require every school within every county or throughout the State to be identical in all respects, and (2) a tuition fee may properly be charged for a supplemental school program.

2. **Schools § 4.1— extended day program—authority of school board—constitutional delegation of power**

A county board of education had authority under G.S. 115-133 to permit the operation of an extended day program at an elementary school by a school sponsored committee, and the legislature could constitutionally delegate to the board of education the power and authority to participate in such a program.

3. **Schools § 5; Taxation § 7.2— extended day program—school board's use of funds for heating and lighting building—public purpose—no necessity for vote**

The expenditure of funds by a county board of education for fuel and electricity to heat, air condition and light a school building while it is used for an extended day program operated by a school sponsored committee is for a public purpose and need not be approved by the voters.

4. **Attorneys at Law § 7.5; Costs § 4.2— action to enjoin school board from expending funds—allowance of attorney fees in equity**

Plaintiffs' action to enjoin defendant board of education from expending school funds for an extended day program does not fall within the equity exception to the rule that attorney fees are not allowable as part of the costs in the absence of contractual or statutory authority where plaintiffs, while tax-

payers and citizens of the State of North Carolina, brought the action primarily to protect their business interests and not to protect or preserve public funds or property.

**5. Schools § 4.1— school board's participation in extended day program—no unauthorized competition with day care centers**

A county board of education's participation in an extended day program does not place the board in unauthorized competition with owners and operators of day care centers or violate the personal and property rights of such owners and operators in violation of Art. I, § 19 of the N.C. Constitution or the Fourteenth Amendment to the U.S. Constitution.

APPEAL by plaintiffs from *Griffin, Judge.* Judgment entered 16 January 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 25 September 1981.

The plaintiffs appeal from an Order granting defendant's motion for summary judgment. Plaintiffs, corporate and individual day care center owners and operators, brought this action to enjoin defendant School Board from conducting its extended day program being operated at the Dilworth Elementary School in Charlotte, North Carolina.

*Tucker, Hicks, Sentelle, Moon & Hodge, P.A., by John E. Hodge, Jr., for plaintiff appellants.*

*Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, P.A., by Hugh B. Campbell, Jr., for defendant appellee.*

BECTON, Judge.

I

Because of the complexity of this case, we detail the facts before proceeding with our analysis. The plaintiffs are owners and operators of day care centers in Charlotte, North Carolina. The defendant School Board is a duly authorized corporate body under the laws of our State.

This controversy revolves around the School Board's involvement in the initiation and operation of the Dilworth Extended Day Enrichment (DEDE) program, which was designed to alleviate the problem of the "latch key" child.[1] After consultation

---

1. "Latch key" children are students who are left without supervision between the time school closes and the time their parents come home from work.

with Dr. Mary E. Mayesky, an education specialist, and community persons, Dr. Jay M. Robinson, the School Superintendent, proposed the adoption of this program based on the successful implementation of a similar program in another city. The School Board, upon adopting the proposal, directed that a "representative from the Dilworth staff, parents, and the Dilworth Ministerial Association be included on the committee appointed to implement the proposed program." Such a committee was formed, and it is this group which actually administers the program. The program is operated at the Dilworth Elementary School and is open to all students enrolled there.

Instead of leaving school at the end of the regular school day, the students enrolled in the DEDE program remain at school where, under the supervision of program staff, they do homework or study, and engage in athletic or artistic activities. The program operates from 2:00 p.m. until 5:30 p.m. Students participating are not required to participate every day nor are they required to remain until 5:30. Parents are free to decide what days and until what times the children will participate.

The program is self-sufficient, the operating costs being covered by the $15.00 per week tuition charged to the participants. Arrangements are made for students who are unable to pay the tuition. A local church provides a van to transport students who need transportation home. The School Board provides the use of the Dilworth Elementary School. Although there are fuel and lighting costs associated with the use of the building, these costs are nominal and are considered by the School Board as an insignificant part of the school system's budget. None of the staff are compensated by the School Board for the services they render.

## II

The plaintiffs argue that the trial court erred in granting the defendants' motion for summary judgment and in denying their motion for summary judgment. Specifically, they contend (1) that the program violates our Constitutional mandate requiring a general and uniform system of free public schools; (2) that school funds were used to establish, and are being used to maintain, the program; (3) that the expenditures for the program are not for public purposes and have not been approved by the voters; (4)

that the School Board is in unauthorized competition with the plaintiffs; (5) that the program violates personal and property rights of the plaintiffs; (6) that there is no statutory authorization for the program; and (7) that the legislature could not delegate to the School Board the power or authority to maintain the program. The plaintiffs also argue that they are entitled to an award of attorneys' fees. For the reasons set forth below, we reject the plaintiffs' assertions.

We note initially that on a motion for summary judgment the moving party has the burden of proving that there are no genuine issues of material fact. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974); *Askew's, Inc. v. Cherry*, 11 N.C. App. 369, 372, 181 S.E. 2d 201, 203 (1971); G.S. 1A-1, Rule 56(c). We also note that the DEDE program is not a day-care center. Our legislature has enacted statutes to protect children who are put in day-care facilities. These statutes outline a detailed plan for the licensing and regulation of these facilities. G.S. 110-85 *et seq.* G.S. 110-86(3) defines a day-care facility to

> [include] any day-care center or child-care arrangement which provides day care on a regular basis for more than four hours per day for more than five children, wherever operated and whether or not operated for profit, except that the following are not included: public schools; nonpublic schools whether or not accredited by the State Department of Public Instruction, which regularly and exclusively provide a course of grade school instruction to children who are of public school age.
> . . .

The DEDE program does not fit this definition. Our analysis of the program, therefore, will be in terms of an educational service operated by a school sponsored committee.

A.

[1] We reject plaintiffs' argument that the DEDE program is in violation of the uniform system requirement of our Constitution. Our Constitution declares that "[r]eligion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries and the like means of education shall forever be encouraged." North Carolina Const. art. IX, § 1. The Constitution further provides that "[t]he General

Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students." N.C. Const. art. IX, § 2(1).

Our Supreme Court has, on many occasions, interpreted the import of these provisions. Very early in the history of public education in our State, the Supreme Court stated:

> It will be observed that it is to be a "system," it is to be "general," and it is to be "uniform." It is not to be subject to the caprice of localities, but every locality, yea, every child, is to have the same advantage, and be subject to the same rules and regulations.

*Lane v. Stanly*, 65 N.C. 153, 157-58 (1871). Further, in *Board of Education v. Board of Commissioners*, 174 N.C. 469, 473, 93 S.E. 1001, 1002 (1917), the Court stated:

> The term "uniform" here clearly does not relate to "schools," requiring that each and every school in the same or other district throughout the State shall be of the same fixed grade, regardless of the age or attainments of the pupils, but the term has reference to and qualifies the word "system" and is sufficiently complied with where, by statute or authorized regulation of the public-school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support.

It is clear, therefore, that the constitutional mandate relates to the statewide scheme for public education. The mandate does not require every school within every county or throughout the State to be identical in all respects. Such a mandate would be impossible to carry out as there are differences within a given school as the caliber of teachers and students differ.

The School Board has not violated the constitutional mandate by formulating the DEDE concept or by allowing it to operate at Dilworth Elementary School. The School Board is required to provide a general and uniform education for the students in the Charlotte-Mecklenburg System. This it has done. There is no re-

quirement that it provide identical opportunities to each and every student. Since it is the Dilworth Committee, and not the School Board, which operates the program, we fail to see how the School Board can be held to violate the constitutional mandate of a general and uniform system. That the School Board, through its Superintendent, was initially involved in the development of the idea does not alter our opinion.

### B.

The plaintiffs also argue that, because tuition is charged the participating students, the program is not free as is required by the Constitution. Our Constitution does not require that public education be completely free. Our Supreme Court, in *Sneed v. Board of Education*, 299 N.C. 609, 264 S.E. 2d 106 (1980), held that supplemental fees charged its students by the Greensboro Board of Education were not unconstitutional. There the Court stated:

> So long as public funds are used to provide the physical plant and personnel salaries necessary for the maintenance of a "general and uniform" system of basic public education, our public school system is "free" — that is, without tuition — within the meaning of our state constitution. That the administrative boards of certain school districts require those pupils or their parents who are financially able to do so to furnish supplies and materials for the personal use of such students does not violate the mandate of Article IX, Section 2(1). Nor do we perceive any constitutional impediment to the charging of modest, reasonable fees by individual school boards to support the purchase of *supplementary* supplies and materials for use by or on behalf of students. Accordingly, we hold today that the fee schedule adopted by the Greensboro City Board of Education and imposed upon those students and their parents who are financially able to pay contravenes neither the letter nor spirit of our constitutional requirement of "free public schools." [Emphasis in original.]

299 N.C. at 617, 264 S.E. 2d at 112.

The tuition charged here is in accord with *Sneed*. So long as the School Board offers tuition free basic education, it satisfies the constitutional mandate that education be free. The students enrolled in the DEDE program do not pay tuition for their basic education. The tuition they pay is for the purpose of covering the

costs of the DEDE program, a *supplemental* educational education experience. Since the DEDE program is not a part of their regular school day, the students are not being charged for their basic education.

## III

**[2]** The plaintiffs argue that there is no statutory authority for the DEDE program and that the legislature could not delegate to the School Board the power or authority to maintain the program. We disagree.

### A.

Public education in this State is the result of a constitutional mandate and the subsequent legislative enactments which fulfill that mandate. Our Constitution provides that there shall be a general and uniform system for which no tuition is charged. N.C. Const. art. IX, § 2(1). The means of achieving this mandate is left up to the legislature. *Coggins v. Board of Education*, 223 N.C. 763, 28 S.E. 2d 527 (1944). The legislature has established a State Board of Education and a position of State Superintendent of Public Instruction to carry out that constitutional mandate and to satisfy N.C. Const. art. IX, § 4. G.S. 115-2 and 12. Policies and procedures regarding public education in this State are determined by the State Superintendent of Public Instruction and the State Board of Education.

Local school boards, established on either a county or city-wide basis, are deemed agents of the State for the purpose of providing public education. *Parent-Teacher Assoc. v. Board of Education*, 4 N.C. App. 617, 621, 167 S.E. 2d 538, 541 (1969), *appeal dismissed* 275 N.C. 675, 170 S.E. 2d 473 (1969). Funds which are administered by the State are disbursed to these local entities for the purpose of meeting educational expenses. *See School Commissioners v. Board of Education*, 169 N.C. 196, 85 S.E. 138 (1915); N.C. Const. art. 9, § 6. These local entities operate under the directives of the State Superintendent of Public Instruction and the State Board of Education. *See Evans v. Mecklenburg County*, 205 N.C. 560, 172 S.E. 323 (1934); G.S. 115-27. They have, however, some degree of latitude in providing services as their particular schools may require. G.S. 115-27. Further, these local entities may supplement the funds administered by the State. *See*

*Board of Education v. Henderson,* 126 N.C. 689, 36 S.E. 158 (1900); N.C. Const. art. IX, § 2(2) and art. IX, § 7; *see Board of Education v. High Point,* 213 N.C. 636, 197 S.E. 191 (1938). G.S. 115-100.35 provides that "clear proceeds" or fines collected by the counties or cities for ordinance violations must be paid for the support of public education. *See Shore v. Edmisten, Atty. General,* 290 N.C. 628, 227 S.E. 2d 553 (1976).

The broad powers of the boards of education to run the schools within their districts were recognized in *Coggins v. Board of Education,* in which our Supreme Court stated:

> Each County Board of Education is vested with authority to fix and determine the method of conducting the public schools in its county so as to furnish the most advantageous method of education available to the children attending its public schools, . . . It may: (1) fix the time of opening and closing schools, . . . (2) determine the length of the school day, . . . (3) enforce the compulsory school law. . . . In addition it is given general control and supervision over all matters pertaining to the public schools within its county . . . and all powers and duties conferred and imposed by law respecting public schools, which are not expressly conferred and imposed upon some other officials, are conferred and imposed upon the county board of education.

223 N.C. at 767-68, 28 S.E. 2d at 530 (citations omitted). *See* also G.S. 115-27.

Generally, school facilities are the responsibility of the School Board and its employees and are to be used for school purposes. Until recently, school premises were to be used for school purposes only. Now, G.S. 115-133 and the Community Schools Act, G.S. 115-73.6 *et seq.*[2], provide that local school boards should allow the use of school premises to facilitate the needs of community groups.

The authority for the School Board's involvement in the development of the DEDE program is found in G.S. 115-133 which provides in relevant part that

---

2. The Community Schools Act is designed to allow greater community input into the operation of the public schools, including input into the curriculum, and to allow greater use of the public school facilities by community groups.

[n]otwithstanding the provisions of G.S. 115-51, county and city boards of education shall have authority to adopt rules and regulations by which school buildings, including cafeterias and lunchrooms, may be used for other than school purposes so long as such use is consistent with the proper preservation and care of the public school property. No liability shall attach to any board of education, individually or collectively, for personal injury suffered by reason of the use of such school property.

We are convinced that the legislative scheme for public education accommodates the desire of the School Board to make available extended educational opportunities for its students. While the responsibility for providing a general and uniform system of education is primarily that of the legislature and State Board of Education, the local entities responsible for carrying out the policies of these bodies are required to consider the needs of the community in shaping its programs.

Under G.S. 115-133, the School Board was free to allow the committee running the DEDE program use of the Dilworth Elementary School building. The record indicates that the School Board devised a schedule of costs and rules and regulations regarding the use of school facilities. This was done even though the statute does not so require. The record also indicates that while the Dilworth Elementary School is used for the program, very little costs are incurred by the School Board thereby. We believe that the School Board's approval of the use of the building is statutorily permissible.

Moreover, we find no merit in the plaintiffs' position that the DEDE program is a special program within the meaning of G.S. 115-367. G.S. 115-367 was designed to provide special educational services for students with special needs; it was designed to facilitate the needs of students who have emotional, physical or mental handicaps or problems. "Children with special needs," by definition, includes children between "five and 18 who because of permanent or temporary mental, physical or emotional handicaps need special education, are unable to have all their needs met in a regular class without special education or related services, or are unable to be adequately educated in the public schools." G.S. 115-366. There is nothing in the record to indicate that the

students serviced by the DEDE program have special needs. They are like all other students their age. Once they leave school they require, because of their age, continued supervision and planned activities to challenge and direct their energies.

### B.

The plaintiffs argue that the legislature may not constitutionally delegate to the School Board the power or authority to maintain the DEDE program. Based upon our interpretation of the statutes which allow the School Board to make available to community groups the facilities within the school system and upon our understanding of the legislature's power to delegate its duty, we reject this argument.

We hold today that the School Board has the power and authority under G.S. 115-133 to allow the operation of the DEDE program at Dilworth Elementary School.

> "It is settled and fundamental in our law that the legislature may not abdicate its power to make laws nor delegate its *supreme* legislative power to any other coordinate branch or to any agency which it may create. [Citation omitted.] It is equally well settled that, as to some *specific* subject matter, it may delegate a *limited* portion of its legislative power to an administrative agency *if* it prescribes the standards under which the agency is to exercise the delegated powers." *Turnpike Authority v. Pine Island,* 265 N.C. 109, 114, 143 S.E. 2d 319, 323, and cases cited. [Emphasis in original.]

*Education Assistance Authority v. Bank,* 276 N.C. 576, 589, 174 S.E. 2d 551, 561 (1970); *see also Foster v. Medical Care Committee,* 283 N.C. 110, 118-19, 195 S.E. 2d 517, 523-25 (1973).

The legislative duty to provide a general and uniform free public education system has been delegated, in part, to the State Board of Education and State Superintendent of Public Instruction. *See* Part III, A, *supra.* G.S. 115-133 is a delegation of a limited portion of the legislature's power to local school boards. Since local school boards operate as agents of the State Board of Education and since the legislature's power to establish the State Board of Education comes from our Constitution itself, we perceive no problem in the legislature's delegation of this authori-

ty to local school boards. This is particularly true since the delegation of the legislative power was not of the supreme power but was a delegation of a limited portion of its power. Further, the comprehensive statutory scheme for public education prescribes the standards under which the State Board of Education and its agents are to operate, negating the possibility that the delegation was arbitrary.

IV

[3] The plaintiffs further argue that school funds were used to establish the DEDE program and are being used to maintain the program. In conjunction with that argument, they contend that the expenditures of these school funds are not for a public purpose and have not been approved by the voters.

The record indicates that school funds are being used to help maintain the DEDE program in that the program uses the Dilworth Elementary School free of charge. Electricity and fuel for lighting, heating and air conditioning the school building for the three and one-half hours per day that the program is in operation is provided by the School Board. These costs have been deemed nominal. There is no separate appropriation in the School Board's budget for them. Further, whatever these costs, they do not appreciably increase the operating or maintenance costs of the school. We do not read the record to show that school funds were used to establish the program.

Although the exact costs of the program are incalculable at this time, they are still costs which are borne by our taxpayers. These costs will increase if the program is expanded and, undoubtedly, will manifest themselves in larger numbers. Because these costs are expenditures of tax funds to a private entity, they must satisfy the public purpose doctrine. *Hughey v. Cloninger*, 297 N.C. 86, 95, 253 S.E. 2d 898, 904 (1979).

Our Constitution requires that all expenditures of tax dollars be for a public purpose. *Nash v. Tarboro*, 227 N.C. 283, 42 S.E. 2d 209 (1947); N.C. Const. art. V, § 2(1). Whenever the constitutionality of an act or expenditure is raised, "it is the duty of the court to ascertain and declare the intent of the framers of the Constitution and to reject any legislative act which is in conflict therewith. [Citations omitted.] The presumption, however, is in

favor of constitutionality, and all doubts must be resolved in favor of the act." [Citations omitted.] *Mitchell v. Financing Authority,* 273 N.C. 137, 144, 159 S.E. 2d 745, 750 (1968).

> The power to appropriate money *from* the public treasury is no greater than the power to levy the tax which put the money in the treasury. Both powers are subject to the constitutional proscription that tax revenues may not be used for private individuals or corporations, no matter how benevolent.
>
> . . . .
>
>     . . . Often public and private interests are so co-mingled that it is difficult to determine which predominates. It is clear, however, that for a use to be public, its benefits must be in common and not for particular persons, interests, or estates; the ultimate net gain or advantage must be the public's as contradistinguished from that of an individual or private entity.

*Id.* at 143-44, 159 S.E. 2d at 749-50.

We believe that the DEDE program satisfies the public purpose doctrine. Although a private benefit inures to the individual students enrolled in the program, the scheme and intent of the program is to further the educational achievements of these students. The record indicates a varied program designed to improve the educational achievements of the students enrolled. The record also contains evidence that the students enrolled improved in their studies. It is declared in both our Constitution and our statutes that the education of our citizens to their maximum capacities is the goal of our educational system, for education of our citizens is essential to good government, morality and a good economy. Consequently, any costs to the school system which result from the program are permissible since they are cloaked with a public purpose.

Further, the School Board has the statutory power to approve the use of the Dilworth buildings under G.S. 115-133. Because it has the authority to allow the use of the buildings, it has the power to spend money to effectuate that authority. In *Hughey v. Cloninger,* our Supreme Court stated that "under [arti-

cle V. section 2] subsection (7) *direct disbursement* of public funds to private entities is a constitutionally permissible *means* of accomplishing a public purpose provided there is statutory authority to make such appropriation." 297 N.C. at 95, 253 S.E. 2d at 904 (emphasis in original). Here we have an indirect disbursement of public funds to the committee which operates the DEDE program. The School Board has the authority to allow the program to operate at Dilworth. Consequently, it has the authority to expend funds for heating or air conditioning and lighting the building.

Because we hold that the School Board had the authority to absorb the fuel and electricity costs of the DEDE program, on the basis that the expenditure was for a public purpose, one of which was to improve the educational achievements of "latch key" children, we reject the plaintiffs' contention that this expenditure must be approved by the voters. *See School District v. Alamance County,* 211 N.C. 213, 223, 189 S.E. 873, 879 (1937) (expenditure of tax funds to operate public schools is a "necessary expense not requiring a vote of the people to make it effective"); *Parent-Teacher Assoc. v. Board of Education,* 4 N.C. App. 617, 621, 167 S.E. 2d 538, 541 (1969), *appeal dismissed* 275 N.C. 675, 170 S.E. 2d 473 (1969) (conversion of high school facility to technical and adult school was a part of school board's decision to provide public education not requiring vote of the people).

V

[4] The plaintiffs also argue that they are entitled to an award of attorneys' fees. We reject this argument on the following authority.

The general rule is that, in the absence of any contractual or statutory liability therefor, attorney fees and expenses of litigation incurred by the plaintiff or which plaintiff is obligated to pay in the litigation of his claim against the defendant, are not recoverable as an item of damages . . . . The reason for the rule is that . . . to allow these expenses to the plaintiff, which are never allowed to a successful defendant, would give the former an unfair advantage in the contest.

"The right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law. Such an item of expense is not allowable in the absence of a statute or rule of court or in the absence of

some agreement expressly authorizing the taxing of attorneys' fees in addition to the ordinary statutory costs." 20 Am. Jur. 2d, Costs, § 72, p. 58.

*Perkins v. Insurance Co.*, 4 N.C. App. 466, 468, 167 S.E. 2d 93, 95 (1969). "North Carolina has applied a rule of equity exception in various classes of cases, i.e. where a litigant at his own expense has maintained a successful suit for the preservation, protection or increase of a common fund or of common property." *Ingram, Commissioner of Insurance v. Assurance Co.*, 34 N.C. App. 517, 524-25, 239 S.E. 2d 474, 478 (1977) *citing Horner v. Chamber of Commerce*, 236 N.C. 96, 72 S.E. 2d 21 (1952). *See also Rider v. Lenoir County*, 238 N.C. 632, 78 S.E. 2d 745 )1953); *Hopkins v. Barnhardt*, 223 N.C. 617, 27 S.E. 2d 644 (1943).

The plaintiffs argue that their action to stop the defendant School Board from expending school funds for the DEDE program falls within the equity exception above. We find no merit in this argument. The plaintiffs, while taxpayers and citizens of the State of North Carolina, brought this action primarily to protect their business interests, not to protect or preserve public funds or property.

## VI

[5] The plaintiffs' remaining argument that the School Board is in unauthorized competition with them and that the DEDE program violates their personal and property rights are summarily rejected based on our foregoing analysis. Further, neither Art. I, section 19 of our Constitution, nor the Fourteenth Amendment to the United States Constitution is violated by the operation of the DEDE program. The plaintiffs have no vested property rights in providing after school care for the children of the Charlotte-Mecklenburg school system.

## VII

Because we find that there is both constitutional and statutory authority for the School Board's involvement with the DEDE program, we uphold the summary judgment granted the School Board. The judgment below is

Affirmed.

Judge MARTIN (Robert M.) and Judge MARTIN (Harry C.) concur.