JOY E. SCHMIDT, Individually and as Guardian Ad Litem for MICHAEL ANTHONY SCHMIDT, Plaintiff v. LAURIE BREEDEN, JENNIFER OWENS and the CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, Defendants

No. COA98-422

(Filed 20 July 1999)

1. Governmental Immunity— Board of Education—after school program

The trial erred by failing to direct partial summary judgment for the Board of Education in a personal injury action arising from an after-school enrichment program. Application of the principles in *Britt v. Wilmington*, 236 N.C. 446, and *Kiddie Korner v. Board of Education*, 55 N.C. App. 134, compels the

SCHMIDT v. BREEDEN

[134 N.C. App. 248 (1999)]

inclusion of the program within the class of activities regarded as traditional governmental functions; however, plaintiff does not dispute the assertion that the Board had no insurance coverage applicable to the first million dollars and the trial court should have directed partial summary judgment for the Board on claims below that amount.

**2. Governmental Immunity— after-school program—staff members—sued in individual capacity**

The trial court did not err in a personal injury action arising from an after-school program by not granting summary judgment for staff members based on governmental immunity. Although the complaint did not specify whether these defendants were sued in their official or individual capacities, the action was filed prior to *Meyer v. Walls*, 347 N.C. 97, and *Mullis v. Sechrest*, 347 N.C. 548, and the Court of Appeals examined the course of the proceedings and the allegations in the pleadings, which reflected an intent to sue these defendants in their individual capacities.

**3. Public Officers and Employees— after school program—staff as public employees**

The trial court did not err in a negligence action arising from an after-school enrichment program by denying summary judgment for two program staff members in their individual capacities. These defendants were properly designated public employees and not public officials and they may be held personally liable for negligent acts in the performance of their duties. However, the court erred by denying partial summary judgment on claims against these defendants in their official capacities for less than one million dollars, for which the Board of Education had no insurance coverage.

Appeal by defendants from order entered 6 February 1998 by Judge Forrest A. Ferrell in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 November 1998.

*Justice & Eve, P.A., by David L. Edwards, for plaintiff-appellee.*

*Charles G. Monnett III, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Middlebrooks and Elizabeth Baker Scanlan, for defendants-appellants.*

JOHN, Judge.

Defendants appeal the trial court's denial of their motion for partial summary judgment predicated upon governmental immunity. We affirm in part and reverse in part.

Pertinent facts and procedural history include the following: On 15 January 1992, Michael Anthony Schmidt (Michael) was a six year old student enrolled in a voluntary after-school enrichment program operated and controlled by defendant Charlotte-Mecklenburg Board of Education (the Board) at the Idlewild Elementary School (hereinafter the Program). The Program was not included within the regular school curriculum, but rather was conducted between 2:00 and 6:00 P.M. each weekday afternoon. It provided:

recreation for . . . children, a nutritious snack, homework time, . . . tutoring in areas that they may [have] need[ed] help . . . , hands-on type[s] of learning, science activities and music activities, language arts . . . [and] all kinds of different activities by way of play.

Michael's mother, plaintiff Joy E. Schmidt, was charged a thirty-five dollar ($35.00) per week enrollment fee for her son's participation in the Program.

According to plaintiff's complaint, Michael suffered a head injury 15 January 1992 while participating in the Program and in the care of Program staff members defendants Laurel Jeanne Breeden (Breeden) and her assistant Jennifer Owens (Owens). At home, Michael subsequently developed a headache, became nauseated and began to vomit. According to plaintiff, she did not realize the medical significance of these symptoms because no one from the Program had disclosed Michael's injury. As a consequence, appropriate medical treatment was delayed, exacerbating Michael's condition which ultimately included permanent brain and vision impairment.

On 8 October 1996, plaintiff filed the instant suit claiming Michael's injuries were caused by the negligence of defendants. The latter answered, generally denying plaintiff's allegations, and moved for partial summary judgment (defendants' motion) upon grounds that

the Board of Education ha[d] not purchased a contract of insurance for the first $1,000,000 of exposure and thus ha[d] not

SCHMIDT v. BREEDEN

[134 N.C. App. 248 (1999)]

waived its governmental immunity for any claim . . . below that threshold.

In opposing defendants' motion, plaintiff did not contest the absence of liability insurance covering claims up to $1,000,000.00. Rather, plaintiff asserted

[t]he After-School Enrichment Program was, in effect, a private day care facility which operated and was located within a building ow[n]ed by the [d]efendant School Board.

Therefore, plaintiff concluded, the Board was not entitled to governmental immunity because operation of the Program constituted a proprietary function. The trial court denied defendants' motion 4 February 1998 and the latter timely appealed.

Preliminarily, we note that orders denying motions for summary judgment are interlocutory and generally not immediately appealable. *See Hill v. Smith,* 38 N.C. App. 625, 626, 248 S.E.2d 455, 456 (1978). Notwithstanding, our courts have established that denial of a summary judgment motion grounded upon governmental immunity affects a substantial right and is thereby immediately appealable pursuant to N.C.G.S. § 1-277(a) (1996) and N.C.G.S. § 7A-27(d) (1995). *See Hallman v. Charlotte-Mecklenburg Bd. of Educ.,* 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996); *see also Moore v. Evans,* 124 N.C. App. 35, 39, 476 S.E.2d 415, 420 (1996) (defendants' appeal proper where trial court denied defendants' partial summary judgment motion predicated upon governmental immunity). As defendants' motion relied upon the defense of governmental immunity, we address the merits of their appeal.

Summary judgment is appropriately granted if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.G.S. § 1A-1, Rule 56(c) (1990). A summary judgment movant bears the burden of establishing the lack of any triable issue, and may do so by showing

that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot . . . surmount an affirmative defense which would bar the claim. . . . All inferences of fact from the proofs offered at the

hearing must be drawn against the movant and in favor of the party opposing the motion.

*Boudreau v. Baughman,* 322 N.C. 331, 342-43, 368 S.E.2d 849, 858 (1988) (citations omitted).

[1] Defendants assert the trial court erred in that

operation and control of the [Program] by the Board is a governmental function . . . and therefore, the Board is entitled to partial summary judgment on the ground of governmental immunity.

We conclude defendants' argument has merit.

The liability of a county for torts of its officers and employees is dependent upon whether the activity in which the latter are involved is properly designated "governmental" or "proprietary" in nature, "a county [being] immune from torts committed by an employee carrying out a governmental function" and "liable for torts committed [by an employee] while engaged in a proprietary function." *Hare v. Butler,* 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied,* 327 N.C. 634, 399 S.E.2d 121 (1990).

Our Supreme Court has delineated the distinction between governmental and proprietary functions as follows:

When a municipality is acting 'in behalf of the State' in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers. In either event it must be for a public purpose or public use.

So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security, or general welfare of the residents of the municipality.

*Britt v. Wilmington,* 236 N.C. 446, 450-51, 73 S.E.2d 289, 293 (1952).

In applying the foregoing test, our courts have focused upon the "commercial aspect of the definition." *Hickman v. Fuqua,* 108 N.C.

App. 80, 83, 422 S.E.2d 449, 451 (1992), *disc. review denied*, 333 N.C. 462, 427 S.E.2d 621 (1993). "Charging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary." *Hare*, 99 N.C. App. at 698, 394 S.E.2d at 235. Nonetheless,

> a 'profit motive' is not the sole determinative factor when deciding whether an activity is governmental or proprietary. Using the *Britt* test, courts look to see whether an undertaking is one 'traditionally' provided by the local governmental units.

*Hickman*, 108 N.C. App. at 84, 422 S.E.2d at 451-52 (citations omitted).

Certain activities qualify as "clearly governmental such as law enforcement operations and the operation of jails, public libraries, county fire departments, public parks and city garbage services." *Hare*, 99 N.C. App. at 698, 394 S.E.2d at 235. "Non-traditional governmental activities such as the operation of a golf course or an airport are usually characterized as proprietary functions." *Id.* at 699, 394 S.E.2d at 235.

In advocating designation of the Program as a traditional governmental activity, defendants rely upon *Kiddie Korner v. Board of Education*, 55 N.C. App. 134, 285 S.E.2d 110 (1981), *disc. review denied*, 305 N.C. 300, 291 S.E.2d 150 (1982), wherein this Court viewed an after-school program as a "supplemental educational experience" and as an operation within the defendant school board's "[legislatively granted] power and authority." *Id.* at 140, 285 S.E.2d at 114. In *Kiddie Korner*, the Charlotte-Mecklenburg Board of Education had established a committee to operate an after-school program at Dilworth Elementary School (the Dilworth program). *Id.* at 135-36, 285 S.E.2d at 112. The Dilworth program was designed to "alleviate the problem of the 'latch key' child," *i.e.*, a child "left without supervision between the time school closes and the time [the child's] parents come home from work." *Id.* at 135 n.1, 285 S.E.2d at 112 n.1.

> Instead of leaving school at the end of the regular school day, the students enrolled in the [Dilworth] program remain[ed] at school where, under the supervision of program staff, they d[id] homework or study, and engage[d] in athletic or artistic activities.

*Id.* at 136, 285 S.E.2d at 112. "[T]he program [wa]s self-sufficient, the operating costs being covered by the $15.00 per week tuition charged to the participants." *Id.*

In similar vein, plaintiff testified she placed Michael in the Program because he "needed a safe place . . . to stay after school until [his parents] could pick him up after work," thereby resolving plaintiff's "latch key" child situation. Further, like the Dilworth program, the Program herein did not constitute part of the regular school curriculum, charged a fee, and provided

> recreation for . . . children, a nutritious snack, homework time, . . . tutoring in areas that they may [have] need[ed] help . . . , hands-on type[s] of learning, science activities and music activities, language arts . . . [and] all kinds of different activities by way of play.

Careful comparison leads to the conclusion that the Program is indistinguishable from that reviewed in *Kiddie Korner*. Under *Kiddie Korner* and the test enunciated in *Britt*, therefore, the Program is properly characterized as "an undertaking . . . 'traditionally' provided by the local governmental units," *Hickman*, 108 N.C. App. at 84, 422 S.E.2d at 452 (citation omitted), and correctly classified as a "supplemental educational experience," *Kiddie Korner*, 55 N.C. App. at 140, 285 S.E.2d at 114.

Plaintiff concedes that "governments in North Carolina have traditionally engaged in activities involving the education of children." However, plaintiff advances the further contention that the Program is more accurately described as a day-care facility, and thus a non-traditional governmental activity, in that it is subject to N.C.G.S. § 110-85 *et seq.* and the rules and regulations established by the Child [Day] Care Commission. Plaintiff is mistaken.

Significantly, plaintiff cites no legal authority, and our research has disclosed none, supporting her contention. To the contrary, similar to our conclusion in *Kiddie Korner* that the Dilworth program was not subject to G.S. § 110-85 *et seq.* and attendant day-care regulations, *see Kiddie Korner*, 55 N.C. App. at 137, 285 S.E.2d at 113, we observe the Program fails to meet the statutory definitional requirement that it operate "for more than four hours per day." *See* G.S. § 110-86(3) (defining day-care facility as "any day-care center or child-care arrangement which provides day care on a regular basis for *more than four hours per day* . . . .) (emphasis added); *cf.* 60 N.C. Op. Atty. Gen. 36 (1990) ("the General Assembly intended all programs operated by public schools under the authority conferred upon them by the General Assembly and the State Board of Education to be exempt from licensure and regulation by the Day Care

Commission"). Plaintiff's reliance on G.S. § 110-85 *et seq.* is thus unfounded.

In addition, plaintiff places great weight upon the circumstance that she is charged a weekly fee for Michael's participation in the Program. This Court has observed that "[c]harging a substantial fee to the extent that a profit is made is strong evidence that the activity is proprietary." *Hare*, 99 N.C. App. at 699, 394 S.E.2d at 235. However, no evidence in the record *sub judice* reveals the profit, if any, derived by the Board from the weekly fees collected from participants in the Program.

Moreover, taking into consideration the twenty hour per week operation of the Program, simple mathematical calculation places plaintiff's weekly fee payment at less than two dollars per hour for Michael's enrollment. It is doubtful that such a fee structure, which must account for costs of activities, materials, staff compensation and refreshments, may fairly be described as "substantial." *Id.* at 699, 394 S.E.2d at 235.

In short, application of *Kiddie Korner* and the principles enunciated in *Britt* compels inclusion of the Program within the class of activities regarded as traditional governmental functions. *See Rowan County Bd. of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 10, 418 S.E.2d 648, 654-55 (1992) ("[e]ducation is a governmental function so fundamental in this state that our constitution contains a separate article entitled 'Education' " [and] "the construction and maintenance of local public schools by a local school board is . . . a governmental function"); *see also Hickman*, 108 N.C. App. at 84, 422 S.E.2d at 452 ("[t]he creation and operation of . . . recreation programs are legitimate and traditional functions of government"); *cf. Dollar v. Dalton Public Schools*, 233 Ga. App. 827, 828, 505 S.E.2d 789, 790 (1998) ("after-school program, for which [plaintiff] paid a fee, . . . operated by a school district [on school premises] . . . is . . . a governmental activity"); *Abrams v. City of Rockville*, 88 Md. App. 588, 604, 596 A.2d 116, 124 (1990) (after-school program "designed to provide an educational and socialization program to children in the city as well, no doubt, to safeguard and supervise them while their parents were at work . . . . [is] of a governmental nature"). Under N.C.G.S. § 115C-42 (1997), therefore, the Board is entitled to governmental immunity to the extent it has not been waived by the purchase of liability insurance. *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 24, 348 S.E.2d 524, 527 (1986).

Plaintiff does not dispute defendants' assertion that "the Board had no insurance coverage in effect on [the date of Michael's injury] that might be applicable to the first $1,000,000 in damages." The trial court thus erred by failing to direct partial summary judgment in favor of the Board for plaintiff's claims below that amount, *see Boudreau*, 322 N.C. at 342-43, 368 S.E.2d at 858, and this matter must be remanded for entry of such order.

[2] Defendants next argue that because Breeden and Owens were "sued only in their official capacity," they were "entitled to partial summary judgment to the same extent as the Board." We cannot agree.

Our Supreme Court examined the distinction between official and individual capacity claims in *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997):

> The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. . . . If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Id.* at 110, 489 S.E.2d at 887 (citation omitted).

Further,

> It is true that it is often not clear in which capacity the plaintiff seeks to sue the defendant. In such cases it is appropriate for the court to either look to the allegations contained in the complaint to determine plaintiff's intentions or assume that the plaintiff meant to bring the action against the defendant in his or her official capacity.

*Mullis v. Sechrest*, 347 N.C. 548, 552, 495 S.E.2d 721, 723 (1998) (citation omitted).

In the case *sub judice*, plaintiff has sought monetary damages, but failed to specify in the caption of her complaint whether Breeden and Owens were being sued in their official or individual capacities. It is now clear that "in order for defendant[s] . . . to have an opportu-

nity to prepare a proper defense, [a] pleading should . . . clearly state[] the capacity in which [defendants are] being sued." *Id.* at 552, 495 S.E.2d at 724.

As noted in *Mullis*:

> It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable. For example, including the words "in his official capacity" or "in his individual capacity" after a defendant's name obviously clarifies the defendant's status. In addition, the allegations as to the extent of liability claimed should provide further evidence of capacity. Finally, in the prayer for relief, plaintiffs should indicate whether they seek to recover damages from the defendant individually or as an agent of the governmental entity.

*Id.* at 554, 495 S.E.2d at 724-25.

Notwithstanding, as the instant suit was filed prior to the decisions in *Meyer* and *Mullis*, we decline defendants' invitation to reverse the trial court upon the ground that plaintiff's complaint failed to meet the requirements thereof. Rather, we proceed to examine the "course of the proceedings and allegations contained in the pleading to determine the capacity in which defendant[s] [Breeden and Owens have] be[en] sued." *Mullis*, 347 N.C. at 553, 495 S.E.2d at 724.

Defendants suggest the "only indication that might possibly lead to the conclusion that [Breeden] and [Owens] were sued in their individual capacit[ies]" is found in plaintiff's prayer for relief "jointly and severly [sic]." We conclude the language of plaintiff's request for relief indeed implies that "damages [we]re [being] sought from the . . . pocket[s]" of Breeden and Owens in their individual capacities, *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887, but find further indications supporting this conclusion as well.

For example, in the section of her complaint identifying "Parties, Jurisdiction and Venue," plaintiff alleged that Breeden and Owens were "citizen[s] and resident[s] of Charlotte, Mecklenburg County, North Carolina," and only in a subsequent paragraph linked them to the Board as agents. By contrast, the allegations of residency and agency in *Mullis* were included in a single paragraph. *See Mullis*, 347 N.C. at 553, 495 S.E.2d at 724.

SCHMIDT v. BREEDEN

[134 N.C. App. 248 (1999)]

More significantly, plaintiff's complaint posited two separate causes of action, the first asserting "Negligence of Defendant Board of Education," and the second "Negligence of Defendants Breeden and Owens." *See id.* (circumstance that plaintiffs "only set forth one claim for relief" relevant in determining intended capacity of defendants).

Thus, in view of the "course of the proceedings and the allegations contained in the [pleading]," *id.*, plaintiff's complaint adequately reflected "an intent . . . to sue defendant[s]" Breeden and Owens in their individual capacities such that defendants had an "opportunity to prepare a proper defense." *Id.* at 554, 495 S.E.2d at 725.

**[3]** Our courts have long recognized that public officers and public employees are generally afforded different protections under the law when sued in their individual capacities. Having determined Breeden and Owens to have been sued individually, we therefore next consider whether each qualifies as a public officer or public employee.

"An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power." *State v. Hord,* 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965).

A public officer is shielded from liability unless he engaged in discretionary actions which were allegedly: (1) corrupt, *Wiggins v. City of Monroe,* 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985); (2) malicious, *id.*; (3) outside of and beyond the scope of his duties, *id.*; (4) in bad faith, *Hare,* 99 N.C. App. at 700, 394 S.E.2d at 236; or (5) willful and deliberate, *Harwood v. Johnson,* 92 N.C. App. 306, 310, 374 S.E.2d 401, 404 (1988).

*Reid v. Roberts,* 112 N.C. App. 222, 224, 435 S.E.2d 116, 119, *disc. review denied,* 335 N.C. 559, 439 S.E.2d 151 (1993).

A public employee, on the other hand, "is personally liable for negligence in the performance of his or her duties proximately causing an injury," *Hare,* 99 N.C. App. at 700, 394 S.E.2d at 236, "even though his employer is clothed with immunity and not liable on the principle of *respondeat superior.*" *Pharr v. Worley,* 125 N.C. App. 136, 138, 479 S.E.2d 32, 34 (1997) (citation omitted).

**SCHMIDT v. BREEDEN**

[134 N.C. App. 248 (1999)]

In light of the foregoing authorities, we believe Breeden and Owens are properly designated public employees and not public officials. Their duties as staff members of the Program when the alleged negligence occurred cannot be considered in the eyes of the law to involve the exercise of the sovereign power. To the contrary, a schoolteacher "is an employee and not an officer and is therefore not entitled to governmental immunity as [his or] her duties are purely ministerial. . . ." *Daniel v. City of Morganton*, 125 N.C. App. 47, 55, 479 S.E.2d 263, 268 (1997). Accordingly, defendants Breeden and Owens may be held personally liable for negligent acts in the performance of their duties, *see id.*, and the trial court did not err in denying defendants' motion as it pertained to plaintiff's claims against Breeden and Owens in their individual capacities.

However, Breeden and Owens were entitled to partial summary judgment to the same extent as the Board for claims against them in their official capacities. *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (official-capacity suits merely another means of pleading an action against the governmental entity), and the trial court erred by denying this portion of defendants' motion.

In sum, the trial court's denial of defendants' motion as to the Board and to Breeden and Owens in their official capacities is reversed and this matter remanded for entry of partial summary judgment in favor of said defendants on plaintiff's claims below $1,000,000.00. The trial court's denial of defendants' motion as it pertained to the claims of plaintiff against Breeden and Owens in their individual capacities is affirmed.

Reversed and remanded in part; affirmed in part.

Judges WALKER and McGEE concur.