IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-472

Filed 19 December 2023

Moore County, No. 21 CVS 982

CRANES CREEK, LLC, Plaintiff,

v.

NEAL SMITH ENGINEERING, INC., Defendant.

Appeal by Plaintiff from order entered 22 November 2022 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 18 October 2023.

> *Van Camp, Meacham & Newman, PLLC, by Thomas M. Van Camp and Michael J. Newman, for Plaintiff-Appellant.*
>
> *Ragsdale Liggett PLLC, by Melissa Dewey Brumback, Amie C. Sivon, and Michael Hutcherson, for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff, Cranes Creek, LLC, appeals from the trial court's order granting Defendant, Neal Smith Engineering, Inc.'s, motion for summary judgment. Plaintiff argues the trial court erred in granting Defendant's motion for summary judgment asserting genuine issues of material fact exist concerning Plaintiff's claims for negligence and negligent misrepresentation. We hold the trial court did not err in granting Defendant's motion for summary judgment and affirm.

## I.    Factual and Procedural Background

In November 2015, Mid-State Development, LLC, purchased several acres located in Southern Pines. Mid-State intended to subdivide and develop the land into a residential subdivision ("Shaw Landing"). The Town of Aberdeen annexed the proposed subdivision from Southern Pines. On 12 November 2015, Mid-State entered into a contract with Defendant to provide civil engineering site services.

On 8 June 2019, Plaintiff signed an offer to purchase Shaw Landing from Mid-State. During the due diligence period, Plaintiff reached out to C. Webster, Defendant's member-manager, to ask if waterflow tests had been conducted. Plaintiff asked Webster to send the results and confirm whether flow was sufficient for fire suppression. B. Welborn, an employee of Defendant, responded to Plaintiff's email on 2 July 2019 stating, in relevant part: "We will need to model the proposed water mains for the NCDEQ-DWR permit, but the fire flow at the dead-end hydrant meets the minimum fire flow requirements at 20 psi."

On 2 October 2019, Plaintiff completed the purchase of Shaw Landing. Sometime later, Plaintiff discovered additional water supply and pipes would have to be installed and run to the subdivision to meet the minimum flow requirements for fire suppression.

On 20 July 2021, Plaintiff filed a complaint against Defendant asserting claims for negligent misrepresentation, negligence, breach of contract, and breach of implied warranties. On 29 September 2021, Defendant filed an answer and counterclaims. On 25 October 2021, Plaintiff filed an answer to Defendant's counterclaims. On 11

October 2022, Defendant filed a motion for summary judgment. On 25 October 2022, Plaintiff filed a motion to amend their complaint and an amended complaint asserting claims for negligent misrepresentation and negligence.

On 10 November 2022, Defendant's motion for summary judgment came on for hearing in Moore County Superior Court. On 22 November 2022, the trial court entered an order granting Defendant's motion for summary judgment and dismissing Plaintiff's complaint and amended complaint. Plaintiff timely filed notice of appeal on 19 December 2022.

## II.   Analysis

Plaintiff contends the trial court erred in granting Defendant's motion for summary judgment as there were genuine issues of material fact concerning Plaintiff's claims for negligence and negligent misrepresentation. We disagree.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2023). In a summary judgment proceeding, the movant "bears the burden of establishing the lack of any triable issue." *Schmidt v. Breeden*, 134 N.C. App. 248, 251, 517 S.E.2d 171, 174 (1999). We review the trial court's allowance of a motion for summary judgment de novo, considering the evidence in the light most favorable to the non-moving party. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

Plaintiff's claims for negligence and negligent misrepresentation are both claims of professional negligence, as Plaintiff alleges Defendant was negligent in its professional capacity as an engineer. *See Frankenmuth Ins. v. City of Hickory*, 235 N.C. App. 31, 34, 760 S.E.2d 98, 101 (2014) (citation omitted) (stating a claim for "negligence" is actually a claim for "professional negligence" where the plaintiff alleges negligent performance by the defendant in its professional capacity). "In a professional negligence action, the plaintiff bears the burden of showing: '(1) the nature of the defendant's profession; (2) the defendant's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiffs.'" *Id.* at 35, 760 S.E.2d at 101 (quoting *Michael v. Huffman Oil Co.*, 190 N.C. App. 256, 271, 661 S.E.2d 1, 11 (2008)).

Further, the plaintiff must establish the standard of conduct or care through expert testimony. *Id.* Through this requirement, the expert is able to "assist the jury in discerning whether [the] defendant's professional performance or conduct did not conform [with the standard of care], and thus was in breach of that duty and the proximate cause of [the] plaintiff's injury." *Handex of the Carolinas, Inc. v. County of Haywood*, 168 N.C. App. 1, 11, 607 S.E.2d 25, 31 (2005).

Expert testimony is not required to establish the standard of care where "the common knowledge and experience of the jury is sufficient to evaluate [the defendant's] compliance with [the] standard[.]" *Id.* (internal marks and citation omitted). This exception "is implicated where the conduct is gross, or of such a nature

that the common knowledge of lay persons is sufficient to find the standard of care required, a departure therefrom, or proximate causation." *Id.* (internal marks and citations omitted). Where the common knowledge exception does not apply and the plaintiff fails to establish the professional standard of care through expert testimony, "summary judgement for the defendant is proper." *Frankenmuth*, 235 N.C. App. at 35, 760 S.E.2d at 101 (citation omitted); *see also Huffman Oil Co.*, 190 N.C. App. at 271, 661 S.E.2d at 11 (holding the plaintiffs failed to establish a prima facie showing of professional negligence where expert testimony regarding the standard of care was lacking).

Thus, this Court will affirm the trial court's grant of summary judgment where the plaintiff's expert testimony "does not show, as is required to sustain the claim [for professional negligence], what an engineer practicing under the relevant standard of care actually does, nor any specific instances of breach of that relevant standard." *Handex*, 168 N.C. App. at 12, 607 S.E.2d at 32 (emphasis omitted).

Here, Plaintiff made professional negligence claims against Defendant for negligent misrepresentation and negligence. Specifically, as to its negligent misrepresentation claim, Plaintiff asserted:

> Plaintiff justifiably relied, to his detriment, on information prepared and conveyed by Defendant without reasonable care, and Defendant owed to Plaintiff a duty of care to make a full and fair disclosure of all relevant facts concerning the sufficiency of waterflow for fire suppression for the project.

Moreover, in its negligence claim, Plaintiff claimed:

> [Defendant] owed a duty to Plaintiff to exercise the ability, skill and care ordinarily used by engineers on similar projects.
>
> [Defendant] did not perform its duties as owed to Plaintiff. [Defendant] failed to exercise the ability, skill and care customarily used by engineers on similar projects. [Defendant] thereby breached its duties to Plaintiff. In doing so, [Defendant] was negligent.
>
> Specifically, [Defendant's] negligence includes but is not limited to, failing to know that the SW Broad Street Hydrant Flow at 20 psi did not meet the applicable Fire Code standards for the project, or negligently misreading the Hydrant Flow Test Report as somehow providing sufficient flow for fire suppression purposes for the project.

Each of these claims required Plaintiff to establish, through expert witness testimony, Defendant's professional standard of care as an engineer. *See Frankenmuth*, 235 N.C. App. at 34, 760 S.E.2d at 101. Plaintiff offered deposition testimony from several experts, M. Zaccardo, T. Cross, and R. Briggs. None of these experts was able to testify as to whether Defendant had breached the standard of care as was required to support Plaintiff's claims. In his deposition, Zaccardo's stated:

> Q:    Did they ask you if you thought [Defendant] violated the standard of care for engineers?
>
> A:    In a sense, I think they asked me that question.
>
> Q:    And what was your answer?
>
> A:    My answer was I couldn't really say, because the plans weren't approved.
>
> Q:    And that's true sitting here today, as well, right?

A:     Yes.

Q:     So because the plans were not approved, you can't say that [Defendant] violated the standard of care?

A:     Because they weren't complete.  Yes.

Cross testified similarly stating:

Q:     Do you have an opinion that [Defendant] violated the standard of care in any capacity?

A:     Based on information provided to me, I do not.

Moreover, Briggs, when asked if Defendant violated the professional standard of care for engineers noted:

A:     [ ] [Defendant] conducted the fire flow test totally correctly.  Some of the wording with respect to the dead-end hydrant you could take issue with, but that is really minor in this case.  [Defendant] also correctly identified the fire flow at the dead-end hydrant of five hundred gallons per minute does meet the minimum fire flow requirement at twenty psi.  The issue with this is does the five hundred gallons per minute satisfy the proposed development requirement with the municipality of Aberdeen.  Everything that I have reviewed indicates that it did not.

Further, Briggs stated, in his opinion, Defendant should have communicated more clearly "some of the quirks" on the project.  Nonetheless, Briggs was never able to definitively testify to the standard or whether Defendant breached the standard, only that he would have included more information in the email.

Because none of Plaintiff's experts were able to testify to the professional standard of care for engineers, Plaintiff failed to present a genuine issue of material

fact in support of its professional negligence claims against Defendant. Thus, the trial court did not err in granting Defendant's motion for summary judgment.

### III.  Conclusion

For the aforementioned reasons, we hold the trial court did not err in granting Defendant's motion for summary judgment.

AFFIRMED.

Judge DILLON and TYSON concur.