NO. COA14-70

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

FRANKENMUTH INSURANCE, as subrogee
of Catawba Country Club,
    Plaintiff,

v.

CITY OF HICKORY, a North Carolina
Municipal Corporation, and MORGAN
FIRE & SAFETY, INC., a North
Carolina Corporation d/b/a UNIFOUR
FIRE & SAFETY,
    Defendants.

Catawba County
No. 11 CVS 689

Appeal by plaintiff from order entered 14 May 2013 by Judge Timothy S. Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 6 May 2014.

> *Dean Gibson Hofer & Nance, PLLC, by Jeremy S. Foster, for plaintiff-appellant.*

> *Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham-Hinch and Patrick H. Flanagan, for defendant-appellee City of Hickory.*

HUNTER, Robert C., Judge.

Frankenmuth Insurance ("plaintiff"), as a subrogee of Catawba Country Club ("the Club"), appeals from an order granting the City of Hickory's ("defendant's") motion for summary judgment on plaintiff's negligence claim. On appeal, plaintiff argues that the trial court erred by entering summary

judgment in favor of defendant because genuine issues of material fact existed as to whether: (1) defendant negligently operated its municipal water system, and (2) the Club was contributorily negligent in its installation of sprinkler system pipes.

After careful review, we affirm the trial court's order.

**Background**

On 5 July 2009, a water pipe leading to the Club's sprinkler system burst, causing damage to the clubhouse. The Club was insured by plaintiff, which filed this action against defendant as the Club's subrogee. In the complaint, plaintiff alleged that defendant's negligent care of the municipal water system, specifically in allowing unreasonably high water pressure to build up in the pipes, was the proximate cause of the damage.

In 2000, the Club hired Crawford Sprinkler Company ("Crawford") to install a sprinkler system on its grounds. Defendant sent members of its Fire Prevention Office to the site to measure the water pressure of the area. The standing water pressure was 180 pounds per square inch ("psi"). Kevin Greer ("Greer"), the Assistant Public Services Director for defendant, testified during deposition that 180 psi was not an uncommon

standing water pressure in that service area. The average citywide standing water pressure was 115 to 120 psi, with some areas in the system attaining pressures of 230 to 240 psi.

It is undisputed that Crawford designed a sprinkler system that called for eight-inch ductile iron pipes to be used throughout, given the 180 psi standing water pressure at the Club. However, Crawford actually installed six-inch PVC piping instead. Greer explained in his testimony that piping comes in two forms—PVC and ductile iron. PVC piping has two different pressure ratings—Class 150 psi and Class 200 psi; ductile iron comes in Class 250 psi and Class 350 psi. The ductile iron pipes are designed to constantly withstand standing water pressures within their class range, but they can also handle pressure surges of two-and-a-half times the class rating so long as the surges are not prolonged or sustained.

Stephen Busic ("Busic"), the Club's General Manager, testified during deposition that soon after installation of the sprinkler system, the Club had continual problems with water pressure. According to Busic, the PVC pipes burst six times due to excess water pressure from 2000 through July 2009, with the sixth burst forming the basis of this action. One of these bursts occurred on 27 July 2007. Morgan Fire & Safety, doing

business as Unifour Fire & Safety ("Unifour"), repaired this break in the line and replaced a three-foot section of the PVC pipe with ductile iron. One of Unifour's employees testified during deposition that it replaced the PVC piping with ductile iron because ductile iron is stronger than PVC.

The flooding that forms the basis of this action occurred on 5 July 2009. Martin Chang ("Chang"), plaintiff's expert witness, visited the Club on 15 July 2009 to investigate the cause of the fracture. Chang was a forensic engineer; he received a bachelor's and master's degree in textile engineering but had no experience in designing or running a municipal water system. After speaking with Busic and examining the site, Chang determined that: (1) a longitudinal fracture was found on the six-inch PVC pipe, indicating stress produced by internal pressure; (2) the fire sprinkler pressure gauge failed at a pressure greater than 300 psi; and (3) the cause of the failure was excessive water pressure from defendant's water supply and potentially a sudden surge in water pressure. Chang noted triangular fractures in the ductile iron reducers, but admitted that he could not rule out mechanical mistakes made during excavation of the pipe as the cause of the fractures. Greer agreed with Chang's assessment that the longitudinal fracture

was caused by internal pressure. However, he developed the opinion that the cause of the fracture was due to inferior piping material, given that the six-inch PVC pipes actually installed were of lesser strength than the minimum Class 250 psi eight-inch ductile iron pipes that were called for in Crawford's plan.

After making insurance payouts to the Club, plaintiff brought this action against defendant and Unifour. It alleged that Unifour was liable for the damages, in part, because it "[n]egligently failed to recommend removal of the six-inch PVC pipe and . . . replacement with eight-inch ductile iron pipe for the entire distance between the pit and the clubhouse." Plaintiff alleged that defendant was negligent when it: (1) "negligently failed to ensure that the water pressure in its municipal water supply did not exceed reasonable levels"; (2) "negligently failed to correct the layout of its municipal water distribution system with a 'loop' system to protect residents at the terminal ends against excess pressures, water hammer, and shock waves within the water distribution system"; and (3) "negligently failed to recommend or install a pressure-relieving device to prevent damage from excess water pressures."

Defendant and Unifour filed motions for summary judgment in April 2013. Both parties were awarded summary judgment in May 2013. Plaintiff timely appealed from both orders granting summary judgment but subsequently withdrew its appeal as to Unifour.

## Discussion

### I. Summary Judgment for Defendant

Plaintiff argues that summary judgment was inappropriate where genuine issues of material fact existed as to whether: (1) defendant was negligent in its operation of the municipal water system, and (2) plaintiff was contributorily negligent. Because plaintiff has failed to carry its burden of establishing a standard of care for defendant's alleged professional negligence, we affirm the trial court's order granting summary judgment in defendant's favor.

"This Court reviews orders granting summary judgment de novo." *Foster v. Crandell*, 181 N.C. App. 152, 164, 638 S.E.2d 526, 535 (2007). Summary judgment is appropriate "only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks omitted). The burden of

proof rests with the movant to show that summary judgment is appropriate. *Development Corp. v. James*, 300 N.C. 631, 637, 268 S.E.2d 205, 209 (1980). We review the record in the light most favorable to the non-moving party. *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

Because "the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court," summary judgment is rarely an appropriate remedy in cases of negligence or contributory negligence. *Thompson v. Bradley*, 142 N.C. App. 636, 641, 544 S.E.2d 258, 261 (2001) (internal quotation marks omitted). However, summary judgment is appropriate in a cause of action for negligence where "the forecast of evidence fails to show negligence on defendant's part, or establishes plaintiff's contributory negligence as a matter of law." *Stansfield v. Mahowsky*, 46 N.C. App. 829, 830, 266 S.E.2d 28, 29 (1980). "[A] [p]laintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, [summary judgment] is proper." *Young v. Fun Services-Carolina, Inc.*, 122 N.C. App. 157, 162, 468 S.E.2d 260, 263 (1996) (internal quotation marks omitted).

Although the complaint states only a claim for "negligence," this cause of action is actually one for "professional negligence" because plaintiff is alleging negligent performance by defendant in its professional capacity as the operator of a municipal water system. *See Michael v. Huffman Oil Co.*, 190 N.C. App. 256, 271, 661 S.E.2d 1, 11 (2008) (characterizing negligence action brought against the City of Burlington for failure to warn, failure to investigate, and negligent misrepresentation as professional negligence where the defendant was installing a potable waterline). Defendant admitted in its answer that it "has all of the corporate powers as set forth in [the North Carolina General Statutes for municipal corporations][.]" When a municipal corporation operates a system of waterworks and sells water for private consumption and use, "it is acting in its proprietary or corporate capacity and is liable for injury or damage resulting from such operation to the same extent and upon the same basis as a privately owned water company would be." *Mosseller v. Asheville*, 267 N.C. 104, 107, 147 S.E.2d 558, 561 (1966).

In a professional negligence action, the plaintiff bears the burden of showing: "(1) the nature of the defendant's profession; (2) the defendant's duty to conform to a certain

standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiffs." *Huffman Oil Co., Inc.*, 190 N.C. App. at 271, 661 S.E.2d at 11 (emphasis and internal quotation marks omitted). "Where common knowledge and experience of the jury is [not] sufficient to evaluate compliance with a standard of care," the plaintiff is required to establish the standard of care through expert testimony. *Id.* "The standard of care provides a template against which the finder of fact may measure the actual conduct of the professional. The purpose of introducing evidence as to the standard of care in a professional negligence lawsuit is to see if this defendant's actions lived up to that standard[.]" *Associated Indus. Contr'rs, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 410, 590 S.E.2d 866, 870 (2004) (internal quotation marks omitted), *aff'd*, 359 N.C. 296, 608 S.E.2d 757 (2005). If the plaintiff fails to establish the proper standard of care through expert testimony in a professional negligence claim, summary judgment for the defendant is proper. *Huffman Oil Co.*, 190 N.C. App. at 271, 661 S.E.2d at 11.

This Court has previously held that the "common knowledge" exception to the requirement that the standard of care be established by expert testimony applies either when the actions

are "of such a nature that the common knowledge of laypersons is sufficient to find the standard of care required, a departure therefrom, or proximate causation." *Associated Indus. Contractors, Inc.*, 162 N.C. App. at 411, 590 S.E.2d at 871. In *Associated Indus. Contractors, Inc.*, this Court held that a surveyor's actions fell within the "common knowledge" exception because a trier of fact could adequately determine whether the surveyor correctly measured ninety-degree angles in its design of a rectangular building site. *Id.* at 411-12, 590 S.E.2d at 871. It noted that "where . . . the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of the performance." *Id.* (citation and quotation omitted).

Here, plaintiff asserted that defendant was negligent in three ways: (1) failing to ensure that water pressure did not exceed reasonable levels; (2) failing to install a "loop" system in its municipal water distribution system to prevent excessive pressures at the terminal ends of the water line; and (3) failing to install or recommend that the Club install a pressure-relieving device. Unlike the measuring of ninety-degree angles in *Associated Indus. Contractors, Inc.*, the

alleged wrongdoing of defendant here required the exercise of professional judgment regarding a "reasonable" level of water pressure in a municipal water system, the skill needed to install a "loop" system, and the expertise to install or recommend installing a pressure-relieving device at the terminal ends of the system. Because these claims could not be properly evaluated with the "common knowledge and experience" of the jury, plaintiff bore the burden of producing expert testimony to establish the proper standard of care to which defendant should have been held. *See Huffman Oil Co., Inc.*, 190 N.C. App. at 271, 661 S.E.2d at 11.

Plaintiff failed to meet this burden. Chang, plaintiff's sole expert witness, specifically testified that he had not studied defendant's facility, did not know what type of water distribution system defendant used, had no experience in designing or running a municipal water system, and did not know of anything defendant may have done to create an increase in water pressure. Busic, the Club's General Manager, testified that he had no experience or training in the field of plumbing at all. Although Chang and Busic testified that the six-inch PVC pipe installed by Crawford burst due to internal pressure, neither could identify what a reasonable municipal corporation

providing water to the Club would do given the facts of this case. Nor could they identify any action taken by defendant that might have caused a sudden increase in water pressure.

Thus, plaintiff essentially argues that because defendant could have prevented the six-inch PVC piping erroneously installed into the Club's sprinkler system from bursting, they necessarily breached a duty owed to the Club by failing to do so. However, absent expert testimony establishing the standard of care that defendant owed the Club, plaintiff failed to provide a context to assess whether defendant's conduct differed from what it should have done. *See Associated Indus. Contractors, Inc.*, 162 N.C. App. at 410, 590 S.E.2d at 870. Thus, by leaving the standard of care unresolved, plaintiff failed to "offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence[.]" *Fun Services-Carolina, Inc.*, 122 N.C. App. at 162, 468 S.E.2d at 263. In other words, "without evidence of the applicable standard of care, [plaintiff] [has] failed to establish a *prima facie* claim for professional negligence." *Huffman Oil Co.*, 190 N.C. App. at 272, 661 S.E.2d at 11-12. Accordingly, summary judgment for defendant was proper, and we need not address defendant's alternative argument on appeal—that

plaintiff was contributorily negligent. *Id.; see also Huffman Oil Co.*, 190 N.C. App. at 271, 661 S.E.2d at 11 (holding that summary judgment in favor of the defendant City of Burlington was proper where the plaintiff failed to provide expert testimony establishing the applicable standard of care).

## Conclusion

Because plaintiff failed to establish a standard of care in its professional negligence claim, we affirm the trial court's grant of summary judgment in defendant's favor.

AFFIRMED.

Judges McGEE and ELMORE concur.